Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2972 | **DATE** | 3/1/2001 |
| **CASE TITLE** | FIRST BANK & TRUST vs. FIRSTAR INFORMATION SERVICES INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. For the reasons stated herein, Defendants' motion is Granted as to Counts I through XII and Plaintiffs' Motion is Denied.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 5 2001 | |
| | Notified counsel by telephone. | | date docketed | 27 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | 01 MAR -2 AM 11:34 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION.

DOCKETED
MAR 5 2001

FIRST BANK & TRUST, et. al.,

    Plaintiffs,

v.

FIRSTAR INFORMATION SERVICES CORP., et. al.,

    Defendants.

Case No. 00 C 2972

The Honorable John W. Darrah

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Judgment on the pleadings. Both motions ask the Court to determine, as a matter of law, the meaning of a single term in contracts which were allegedly breached by Defendants. It is appropriate that the two motions be considered simultaneously. For the reasons that follow, Defendants' Motion is GRANTED and Plaintiffs' Motion is DENIED.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no

27

genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

FED.R.CIV.P. 12(c) governs motions for judgment on the pleadings. It states, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." However, if a court considers matters outside the pleadings, the motion will be construed as one for summary judgment and disposed of as provided in Rule 56. FED.R.CIV.P. 12(c). Since Plaintiffs have filed a motion for summary judgment on the same legal issues which form the basis of Defendants' motion for judgment on the pleadings, Defendants' motion is properly considered as one for summary judgment.

Although the substantive law of the forum state would usually apply in a diversity case, the agreements at issue in this case include a choice-of-law provision, which states that they are to be "governed by the laws of the State of Wisconsin, except as superceded by Federal law." (Pl. Mem. 2). This provision is in full force and effect; Wisconsin contract law is applicable in construing the agreements.

Contract interpretation, including the question of whether a contract is ambiguous, involves conclusions of law. *Wisconsin Label Corp. v. Northbrook Property & Casualty Insurance Co.*, 607 N.W.2d 276, 281 (Wisconsin 2000). "The primary goal in interpreting a contract is to determine

and give effect to the parties' intention." *Id.* When the terms of a contract are unambiguous, a court will apply its literal meaning. *Id.* "However, if contractual language may reasonably be construed to have more than one meaning, the contract is ambiguous." *Id.* "Any ambiguity that does exist will be interpreted against the drafter, especially when the contract is a standard form supplied by the drafting party." *Id.* However, if the terms are not ambiguous, a court should not engage in construction. *Id.*

## BACKGROUND

Considering the undisputed facts from the Plaintiffs' Local Rule 56.1(a) statements of material facts and exhibits (referred to herein as "Pls.' 56.1"), the facts, for purposes of resolving the motions, are as follows.

The 12 Plaintiffs are banks which provide banking services to individual and commercial customers in Illinois. (Pls.' 56.1 ¶ 1). Defendant Firstar Corporation ("Firstar") is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. (Pls.' 56.1 ¶ 2). Defendant Firstar Information Services Corporation ("FISC") was a subsidiary of Firstar qualified to do business in Illinois until it was voluntarily dissolved on June 30, 1998. (Pls.' 56.1 ¶ 3).

During the period between April 28, 1994 through July 28, 1998, FISC entered into a "Master Data Processing Service Agreement" (the "Agreement(s)") with each of the Plaintiffs, which stated that FISC would provide substantially all of the data processing services required by each Plaintiff. (Pls.' 56.1 ¶ 5). Each Agreement provided that Defendant would supply multiple services to Plaintiffs. Under one Agreement, Defendants provided 25 different services for a Plaintiff. (Def. Mem. 7). The Agreements were for a minimum term of four and one-half years and were scheduled to expire between July 31, 2001 and September 30, 2004. (Pls.' 56.1 ¶ 6). The Agreements were

standard forms prepared by FISC with some modified provisions negotiated by the parties. (Pls.' 56.1 ¶ 6).

On or about October 26, 1998, Firstar notified each of the Plaintiffs in writing that it would terminate each of the contracts no later than June 30, 2000. (Pls.' 56.1 ¶ 12). Firstar's letter of termination stated:

> ...given our impending merger planned for November 20, 1998, Firstar/Star Bank management has determined that we will exit the correspondent automation services business...

(Pls.' 56.1 ¶ 12).

Each of the Agreements contained a section entitled "Terms" which contained substantially the following language:

> This Agreement may be terminated at the end of the term set forth above, provided that Customer gives Firstar (FISC) at least 30 (180) days' prior written notice. If such notice is not given, this Agreement shall continue on a month-to-month basis (for successive one-year terms)...

(Pls.' 56.1 ¶ 14).

Section 7 of each Agreement was entitled "Systems Modification" and included the following language with some small variations which are not material to the present dispute:

> Firstar (FISC) may modify, amend or replace any Service or any element of its systems at any time when Firstar (FISC) deems that such is appropriate or necessary. Firstar (FISC) may terminate providing any Service upon 180 (270/360) days' prior written notice to Customer and may terminate any Service immediately upon any action by any regulatory agency, legislative body or court having jurisdiction over Firstar (FISC) or Customer which Firstar (FISC) deems to have an adverse material effect on such Service or require termination of such Service...

(Pls.' 56.1 ¶ 15).

## DISCUSSION

The motions before the Court address the proper meaning of the term "any" in section 7 of the Agreements signed between Defendant FISC and the 12 Plaintiffs. The line which forms the basis of this controversy reads, "Firstar may terminate any Service...." Plaintiffs argue that "any," as used in section 7 of the Agreements, meant "one" or "some," thereby allowing Defendants to cease providing one or some but not all of the services provided under the Agreements. Defendants claim that use of the term "any" meant they could cease providing as many of the services as they chose, provided they gave proper notice. The parties do not dispute that proper notice was given.

The "starting point for the interpretation of any contract is, of course, the language itself." *Dugan v. Smerwick Sewerage Company*, 142 F.3d 398, 402 (7th Cir. 1998). The Defendants point out that the Agreements did not say that Plaintiffs could terminate *all* services. (Pl. Mem. 7). Conversely, the Agreements did not say FISC could terminate just *one* service. If, as Plaintiffs suggest, full effect should be given to the old maxim *expressio unius est exclusio alterius*; then it would appear that the drafter's decision to avoid using either of the terms *one* or *all* should be considered significant.

Plaintiffs provide various definitions of *any* drawn from Webster's Third New World Dictionary (1988). *Any* is alternatively defined as:

> (1.) One, no matter of which, of more than two [*any* pupil may answer] (2.) some, no matter how much or how little, how many, or what kind [he can't tolerate *any* criticism] (3.) without limit [entitled to *any* number of admissions] (4.) even one; the least amount or number of [I haven't *any* dimes] (5.) every [*any* child can do it] (6.) Of considerable size or extent [we won't be able to travel *any* distance before nightfall].

Plaintiffs argue that definitions #2 through #6 should be disregarded and definition #1 which equates

*any* with *one* should be applied. Plaintiffs cite *In re Scheyer's Estate*, 336 Mich. 645, 59 N.W.2d 33 (1933), for the proposition that *any* should be defined as *one* when it qualifies a singular noun. However, this reasoning is flatly contradicted by the definitions they excerpt from Webster's. Definitions #2, #3, #5, and #6 all equate *any* with numbers greater than *one* but cite sample usages in which *any* qualifies a singular noun (i.e., criticism, number, child, distance).

Plaintiffs provide no other legal authority which specifically addresses the construction to be given the term *any*. Defendants cite a number of Wisconsin cases which support their construction of the word as meaning *without limit*. In *Coutts v. Wis. Retirement Bd.*, 547 N.W.2d 821, 825 (Wis. App. Ct. 1996), the court considered the meaning of the phrase, "[a]ny unemployment compensation benefit payable." The court found "[a]ny is generally understood to mean every." *Id.* Likewise, in *State v. Timmerman*, 542 N.W.2d 221, 224 (Wis. Ct. App. 1995), the court considered the meaning of *any* as used in a statute governing probationary release of prisoners. The court found: "[t]he word "any" is defined as "[s]ome; one out of many; an indefinite number" and is "often synonymous with 'either,' 'every,' or 'all.'"(citation omitted). *Id.* at 224. Wisconsin courts have construed the term *any* as singular when it is used in conjunction with *one*. *See, e.g., N.E.M. v. Strigel*, 543 N.W.2d 821, 823 (Wis. Ct. App. 1995)(interpreting *any* in singular sense when used in statutory phrase "any one act"). *See also, Dull v. Advance Mepco Central Lab, Inc.*, 444 N.W.2d 463, 464 (Wis. Ct. App. 1989)(construing *any*, as used in "any one indebtedness", as singular).

In this case, the meaning of the term *any* is not ambiguous. As used in section 7 of the Agreements, the term means "without limit". Had the parties intended it to mean *one*, the Agreements would have stated so explicitly.

This Court finds that under Section 7, Defendants were allowed to cease providing as many services as they liked, provided they gave sufficient notice.

Plaintiffs urge this Court to give section 7 "a construction which will make it a rational business instrument." However, construing *any* to mean *one* in the context of this Agreement would not have this effect. Clearly, the Agreement provided for Defendants to supply multiple services to Plaintiffs. Under one Agreement, Defendants provided 25 different services for a Plaintiff. (Def. Mem. 7). It would seem irrational for the Defendants to reserve the right to terminate just one service out of these 25.

The wording of section 7 makes it clear that Defendants were granted broad powers to control their provision of service. The first line of the section allows Defendants to modify *any service* at *any time*. If *any* was found to mean one, then Defendants could only modify one service throughout the term of the contract, regardless of any changes in technology, systems, etc. The second line, which forms the basis of this dispute, also allows Defendants to terminate any service if they deem it to be materially affected by regulatory, legislative, or legal actions. It is clear that the parties intended section 7 to allow Defendants broad discretion in their provision of services.

Defendants did not breach their Agreements with Plaintiffs when they ceased providing all service. This Court need not reach the issue of damage limitation since Plaintiffs' claims I through XII are dismissed.

## CONCLUSION

For the reasons stated herein, Defendants' Motion is GRANTED as to Counts I through XII, and Plaintiffs' Motion is DENIED.

**IT IS SO ORDERED.**

*[signature]*

John W. Darrah, Judge
United States District Court

Date: March 1, 2001