# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2972 | DATE | 3/27/2003 |
| CASE TITLE | FIRST BANK & TRUST vs. FIRSTAR INFORMATION SERVICES CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiffs' motion for partial summary judgment is granted; and Firstar's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 31 2003 | |
| | Notified counsel by telephone. | | date docketed | 58 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 MAR 28 PM 1:12 | date mailed notice | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
MAR 3 1 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST BANK & TRUST, f/k/a FIRST )
BANK & TRUST OF EVANSTON; BURLING )
BANK; CAMBRIDGE BANK OF LAKE )
ZURICH; COMMUNITY BANK-ELMHURST; )
COMMUNITY BANK-WHEATON/ GLEN )
ELLYN; ILLINOIS STATE BANK OF LAKE )
IN THE HILLS; MIDTOWN BANK; )
PRAIRIE BANK & TRUST COMPANY; )
THE PRIVATE BANK & TRUST COMPANY )
AND VILLAGE BANK & TRUST- )
NORTH BARRINGTON, )
Illinois state banks; NORTHWEST )
SUBURBAN BANCORP, INC., a Delaware )
corporation; and NATIONAL BANK OF )
COMMERCE, a national banking association, )
                )
  Plaintiffs,         )
                )
  v.              )
                )
FIRSTAR INFORMATION SERVICES )
CORPORATION, a dissolved Wisconsin )
corporation; FIRSTAR CORPORATION, )
a Wisconsin corporation; and U.S. BANCORP, )
a Delaware corporation, )
                )
  Defendants.        )

Case No. 00 C 2972

Honorable John W. Darrah

## MEMORANDUM OPINION AND ORDER

Nine of the eleven plaintiff banks in this action move for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, regarding section 12 of an agreement between the parties. Defendants, Firstar Information Services Corporation, Firstar Corporation, and U.S. Bancorp (hereinafter "Firstar"), move for summary judgment in their favor on the Customers Remedies provision and for summary judgment regarding Firstar's right to terminate the Agreement pursuant

58

to section 7.[1] For the reasons stated herein, Firstar's Motion for Summary Judgment is denied on both grounds, and Plaintiffs' Motion for Partial Summary Judgment is granted.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the

---

[1] This issue was previously ruled upon by this Court; the ruling was appealed to the Court of Appeals for the Seventh Circuit. The Seventh Circuit held that the Agreements were ambiguous as to whether section 7 allowed Firstar to terminate the Agreements and remanded the case to this Court to afford both parties the opportunity to submit extrinsic evidence to explain the meaning of section 7. *See First Bank & Trust v. Firstar Info. Servs. Corp.*, 276 F.3d 317, 326 (7th Cir 2001).

opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1")[2] and exhibits are as follows.

Since the mid-1960's, Firstar provided data processing services to various customer banks. (Def.'s 56.1 ¶ 8.) Each bank entered into a Master Data Processing Service Agreement ("the Agreement"), which provided that Firstar would provide substantially all of the data processing services required by the banks. (Def.'s 56.1 ¶ 9; Pls.' 56.1 ¶ 5.) The Agreements between Firstar and the Plaintiffs were for express terms, each expiring at various times during the period of July 31, 2001 through September 30, 2004. (Def.'s 56.1 ¶ 10; Pls.' 56.1 ¶ 6.)

*Plaintiffs' Motion for Partial Summary Judgment Based on Section 12*

Section 12 of the Agreements, entitled "Remedies Upon Default" provides for "Customer's Remedies: If an event of default occurs on the part of Firstar, Customer may terminate this Agreement and recover from Firstar in accordance with Sections 13(a) and 13(b), but such recovery shall be limited an aggregate of $ [******]." (Pls.' 56.1 ¶ 13.)

Section 11 provides for "Events of Default . . . b. Firstar. It shall be an event of default on the part of Firstar if Firstar shall fail to process the Customer's work in accordance with the

---

[2]The parties did not file responses to the other party's Statement of Undisputed Material Facts. Instead, the parties filed additional statements of undisputed material facts. Therefore, these paragraphs are deemed as admitted.

standards set forth in Section 13 hereof." (Pls.' 56.1 Ex. D § 11b.)

Section 13 provides that: "[i]n performing the Services, Firstar shall use the same procedures and exercise the same or similar degree of care which it uses or exercises in performing similar services for its own business and shall not be held to any other or higher degree of care." (Pls.' 56.1 Ex. D § 13a.)

*Firstar's Motion for Summary Judgment Based on Section 7*

The Agreements were based upon standard forms prepared by Firstar. (Pls.' 56.1 ¶ 6.) Each of the Agreements contained the following provision at section 7, entitled "Systems Modification":

> Firstar may modify, amend or replace any Service or any element of its systems at any time when Firstar reasonably deems that such is appropriate or necessary. Firstar may terminate providing any Service upon [180/270/360] days' prior written notice to Customer and may terminate any Service immediately upon any action by any regulatory agency, legislative body, or court . . . which Firstar deems to have a material adverse effect on such Service or require termination of the Service.

(Def.'s 56.1 ¶ 11.)

The Agreements specifically contemplated Firstar's termination of "Core Services". (Def.'s 56.1 ¶ 12.) Core Services are those services that are essential to Plaintiffs' continued operations. (Def.'s 56.1 ¶ 13.) For example, Plaintiffs could not function without a demand deposit system, a time deposit system, various loan systems, or customer information systems. (Def.'s 56.1 ¶ 13.) Most banks agree that, because Core Services are so vital, if Firstar were to terminate even a single Core Service, the banks would have no choice but to leave the Firstar system altogether. (Def.'s 56.1 ¶ 14.) Two of the Plaintiffs, Community Bank of Elmhurst and Illinois State Bank, believe that there might be a possibility of replacing a Core Service with a similar service from another provider and somehow integrating that service into the Firstar system. (Def.'s 56.1 ¶ 15.) However, even these

banks acknowledge that it would be undesirable to buy key services in a piecemeal fashion from different vendors and cannot estimate the cost of integrating a third-party Core Service into Firstar's system. (Def.'s 56.1 ¶ 16.) The remaining banks simply do not know whether it would be possible to do such a thing. (Def.'s 56.1 ¶ 17.)

At the time Plaintiffs were negotiating the Agreements with Firstar, many were in the process of organization; and the Agreements with Firstar were their first data processing contracts. (Pls.' 56.1 ¶ 8.) At that time, other alternative organizations were bidding for the data processing business of new banks. (Pls.' 56.1 ¶ 9.) Once each of the Plaintiffs executed the Agreements and commenced implementation thereof, each of the Plaintiffs would have been unable to change data processing vendors without substantial expense and inconvenience. (Pls.' 56.1 ¶ 9.) Each of the Plaintiffs paid all fees due and otherwise satisfied all of their obligations under the Agreements with Firstar. (Pls.' 56.1 ¶ 10.)

In October 1998, Firstar decided to exit the business. (Def.'s 56.1 ¶ 27.) In a letter dated October 26, 1998, Firstar notified its customers of its decision. (Def.'s 56.1 ¶ 31.)

Various employees of Plaintiffs testified as to their understanding of section 7. Among these was Don Fischer ("Fischer"), the representative of Plaintiff Community Bank of Wheaton/Glen Ellyn, who admitted that when he reviewed a draft of the Agreement, he understood that section 7 might allow Firstar to terminate the entire Agreement. (Def.'s 56.1 ¶ 62.) Fischer specifically raised the issue of the wording of section 7 with Firstar's representative, Peter Geigel ("Geigel"). (Def.'s 56.1 ¶¶ 63, 66.) According to Fischer, Geigel assured him that Firstar would not terminate all services. (Def.'s 56.1 ¶ 64.) Geigel did not tell Fischer that Firstar could not terminate the entire Agreement under section 7 but only that it would not do so business reasons. (Def.'s 56.1 ¶ 65.)

Fischer's primary concern was that Firstar might exit the business "right after" he signed the Agreement. (Def.'s 56.1 ¶ 68.)

According to Fischer, the "spirit" of the contract limited Firstar's termination rights. (Def.'s 56.1 ¶ 71.) Further, the "spirit" of the contract is violated at the point that Firstar's termination of services causes a "major disruption" to the banks' operations. (Def.'s 56.1 ¶ 72.)

According to Chester Ward ("Ward") of Plaintiff Illinois State Bank, who negotiated the Agreement, section 7 did not allow Firstar to terminate any services at all. (Def.'s 56.1 ¶ 111.) Ward believes that the word "terminate" as used in Paragraph 7 means only that Defendants may modify services. (Def.'s 56.1 ¶ 112.) Ward believes this because the subheading title of section7 is "Systems Modification". (Def.'s 56.1 ¶ 113.)

## DISCUSSION

*The Termination Issue of Section 7*

Firstar argues that summary judgment is appropriate because the extrinsic evidence supports their interpretation of section 7 that Firstar may terminate as many services as it wishes, including all services, upon proper notice.

Pursuant to the Agreements, Wisconsin law governs. Under Wisconsin law,

> [t]he primary goal in interpreting a contract is to determine and give effect to the parties' intention. . . . When the language of a contract is unambiguous, [the court] will apply its literal meaning. . . . However, if contractual language may reasonably be construed to have more than one meaning, the contract is ambiguous.

*Wis. Label Corp. v. Northbrook Prop. & Casualty Ins. Co.*, 607 N.W.2d 276, 282 (Wis. 2000). Contract terms are given their plain and ordinary meaning unless they are otherwise defined in the contract. *Meyer v. U.S. Fire Ins. Co.*, 582 N.W.2d 40, 41 (Wis. 1998). "The contract is considered

as a whole in order to give each of its provisions the meaning intended by the parties." *Campion v. Montgomery Elevator Co.*, 493 N.W.2d 244, 249 (Wis. 1992). Whether a contract is ambiguous is a question of law, and ambiguities in a contract are construed against the drafter "especially when the contract is a standard form supplied by the drafting party." *Wis. Label Corp.*, 607 N.W.2d at 283. "Generally, if a contract is ambiguous and the parties resort to extrinsic evidence to explain the agreement, construction of the document becomes a fact question. . . . However, if the undisputed facts permit only a single inference, the court may resolve the contract's meaning without resort to a jury." *First Bank & Trust*, 276 F.3d at 322.

There is a genuine issue of material fact as to the meaning of the term "any" as used in section 7. Firstar has presented testimony of Plaintiffs' employees as to their understanding of the disputed term. However, almost all testified to his or her current understanding not to his or her understanding at the time the Agreements were entered into or negotiated. Fischer testified that he was concerned about the wording of section 7 because he believed that section 7 might allow Firstar to terminate the entire Agreement. He further testified that Geigel assured him that Firstar would not terminate all services. Furthermore, it is undisputed that section 7 was not discussed during negotiations of the Agreements. Moreover, Ward testified that he understood the word "terminate" as used in section 7 to mean that Firstar could only *modify* and not terminate services. Thus, the extrinsic evidence presented does not permit only a single inference that it was the intention of the parties at the time the Agreements were entered into to permit Firstar to terminate all services, rather than some, upon proper notice. Therefore, Firstar's Motion for Summary Judgment is denied on this ground.

### *The Customers' Remedies Issue of Section 12*

Plaintiffs argue that partial summary judgment is appropriate because Paragraph 12b, which limits the customers' remedies, does not apply to the present dispute involving the termination of services by Defendants. Defendants also move for summary judgment on this basis, arguing that section 12b does apply because the termination of services qualifies as an "event of default".

As set out above, section 12b limits damages to a set amount if an "event of default occurs on the part of Firstar". Section 11b of the Agreements specifically provides that an "event of default" occurs if Firstar fails "to process the Customer's work in accordance with the standards set forth in Section 13." Section 13a provides that "[i]n performing the Services, Firstar shall use the same procedures and exercise the same or similar degree of care which it uses or exercises in performing similar services for its own business and transactions . . . ."

Firstar submits that the language regarding limitation of liabilities is unambiguous and is to be determined by the Court as a matter of law by reference to the written agreement only. Firstar argues that, by not processing Plaintiffs' work at all, it is not processing the work in accordance with section 13's standards and that, therefore, an "event of default" has occurred. However, "event of default" is specifically defined by the terms contained in section 11b of the Agreements, and the intent of the parties regarding the interpretation of section 12b must be determined in consideration of this clearly expressed meaning. An "event of default" occurs when Firstar's performance of its data processing services falls below certain specifically ascertainable standards set out in section 13. Clearly, some degree of performance of data processing services by Firstar is contemplated to be measured against the stated standard of quality to determine if an "event of default" has occurred to invoke the application of section 12b. Sections 11 and 13 do not address a refusal to perform. A

refusal to perform services, therefore, cannot be said to be an "event of default" but, rather, is a breach of contract to which section 12b does not apply. Therefore, Firstar's Motion for Summary Judgment is denied on this ground; and Plaintiffs' Motion for Partial Summary Judgment is granted.

## CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Partial Summary Judgment is granted; and Firstar's Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: March 27, 2003